# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TIMOTHY J. FITZGERALD AND VIRGINIA PARSONS, | ) ) ) | CV. NO. 11-00199 DAE-RLP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| AMERICAN SAVINGS BANK, F.S.B,; MERSCORP, INC.,' MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; MARC IOANE, ASSISTANT VP OF AMERICAN SAVINGS BANK, FSB AND CERTIFYING OFFICER OF MERS; SUSAN TILDEN LAU, SR. VP PRESIDENT OF AMERICAN SAVINGS BANK FSP AND CERTIFYING OFFICER OF MERS; AND DOES 1 THROUGH 20 INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER: (1) DISMISSING PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE AS TO ALL DEFENDANTS; (2) DENYING AS MOOT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (3) VACATING THE HEARING

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. After reviewing the motions and the supporting and opposing memoranda, the Court **DISMISSES WITHOUT PREJUDICE**

Plaintiffs' Complaint against all Defendants, **DENIES AS MOOT** Defendants'

Motion for Summary Judgment (Doc. # 9), and **VACATES** the Hearing on this

matter set for October 14, 2011.

## BACKGROUND

On March 28, 2011, Plaintiffs Timothy J. Fitzgerald and Virginia

Parsons (collectively "Plaintiffs") filed a Complaint in this Court against

Defendants American Savings Bank, F.S.B., Merscorp, Inc., Mortgage Electronic

Registration Systems ("MERS"), Marc Ioane, and Susan Tilden (collectively

"Defendants"), alleging that Plaintiffs had been lured into a predatory mortgage

loan.  ("Compl.," Doc # 1.)  Specifically, Plaintiffs' Complaint alleges the

following Counts:

- Count I: Violations of the Sherman/Clayton Anti-Trust Acts.  (FAC ¶¶ 173–98.)

- Count II: Violations of the Hawaii Anti-Trust/Anti-Monopoly Acts.  (Id. ¶¶ 199–203.)

- Count III: Misrepresentation.  (Id. ¶¶ 204–19.)

- Count IV: Unfair and Deceptive Acts or Practices.  (Id. ¶¶ 220–35.)

- Count V: Breach of Fiduciary duty.  (Id. ¶¶ 236–45.)

- Count VI: Unjust Enrichment.  (Id. ¶¶ 246–50.)

- Count VII: Slander of Title  (Id. ¶¶ 251–61.)

- Count VIII: Injunctive Relief.  (Id. ¶¶ 262–67.)

Plaintiffs reside in the State of Hawaii.  (Id. ¶ 5.)  On or about July 2007, Plaintiffs began researching a lender to purchase a parcel of property located at 2276 W. Vineyard Street, Wailuku, Hawaii (the "Subject Property").  On December 17, 2007, Plaintiffs executed a promissory note agreeing to pay $800,775.00 to American Savings Bank, F.S.B. ("ASB") as Lender.  (Id. ¶ 63.)  The note states the interest rate is "six and one-quarter percent (6.625%)."  (Id.; see also, "Note," Compl., Ex. 1, at 1).  The note included funds for the construction of Plaintiffs' residence on the Subject Property.  (Compl. ¶ 64.)  On the same day Plaintiffs entered into a mortgage, which was recorded in the Bureau of Conveyances on December 26, 2007.  (Id. ¶ 66; see also "Mortgage," Compl., Ex. 2.)  ASB is listed on the mortgage as the originating lender and MERS is the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns."  (Mortgage at 2.)

Sometime around 2009, Plaintiffs defaulted.  (Doc. # 10-1 ¶ 12.)  Defendants thereafter initiated a non-judicial foreclosure sale.  (Compl., Ex. 7.)

Plaintiffs received notice of the foreclosure sale and an auction was scheduled for December 15, 2009.  (Doc. # 10-1 ¶ 13.)

The day before the scheduled auction, on December 14, 2009, Plaintiff Parsons filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Hawaii.  ("DCSF," Doc. # 10, Ex. G.)  On May 3, 2010, Defendant MERS was granted relief from the automatic stay in Plaintiff Parson's bankruptcy case.  (DCSF, Exs. H, I.)  On June 15, 2011, Plaintiff Fitzgerald filed for Chapter 13 bankruptcy.  (DCSF, Ex. J.)

On November 8, 2010, Plaintiff Parsons's bankruptcy case was converted from Chapter 11 to Chapter 7, and Dane S. Field was appointed as the bankruptcy Trustee.  (DCSF, Ex. K.)  On February 8, 2011, a Discharge of Debtor was filed in Plaintiff Parsons's bankruptcy case.  (DCSF, Ex. L.)

On January 13, 2011, Defendant ASB was granted relief from the automatic stay in Plaintiff Fitzgerald's bankruptcy case.  (DCSF, Ex. M.)  On March 3, 2011, Defendant ASB was granted relief from the codebtor stay in Plaintiff Fitzgerald's bankruptcy case.  (DCSF, Ex. N.)

On March 11, 2011, by assignment of mortgage, MERS assigned its rights, title and interest in the mortgage to ASB.  ("Assignment," DCSF, Ex. F.)

On March 23, 2011, Plaintiffs filed their Complaint. Plaintiffs allege that Defendant ASB "was not forthcoming about the economic collapse or the overall securities fraud that caused the nation's economic decline." (Id. ¶ 91.) Plaintiffs also contend that Defendant BAS "has failed to provide a valid assignment from MERS of the mortgage that they split away from the note in [a] securitization scheme." (Id. ¶ 126.) Plaintiffs also complain that "ASB did not hold the note and mortgage in June 2010 when MERS was granted the relief from stay in Parsons's bankruptcy." (Id. ¶ 128.) This "deception" allegedly resulted in Plaintiffs' inability to modify their loan. (Id. ¶ 130.) Finally, Plaintiffs contend that MERS, as an entity, "circumvents the state's recording statutes." (Id. ¶ 140.)

On June 1, 2011, Defendants filed a Motion for Summary Judgment. ("MSJ," Doc. # 9.) On August 8, 2011, Plaintiffs filed their Opposition. ("Opp'n," Doc. # 24.) On August 15, 2011, Defendants filed their Reply. ("Reply," Doc. # 26.)

## STANDARD OF REVIEW

### I.    Motion for Summary Judgment

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party without the ultimate burden of persuasion at trial—usually, but not always, the defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp.</u>, 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  <u>Porter</u>, 419 F.3d  at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256

(1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence' " must be produced. <u>T.W. Elec. Serv.</u>, 809 F.2d at 630 (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu</u>, 198 F.3d at 1134. Further, the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)). "Conclusory allegations unsupported by factual data cannot defeat summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078 (9th Cir. 2003).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.; see also Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (citations omitted). However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

II.      Federal Rules of Civil Procedure 8 and 12

The court may dismiss a complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on its own motion. See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief."); Ricotta v. California, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim sua sponte for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); see also

Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that district court may dismiss cases sua sponte pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged). Additionally, a paid complaint that is "obviously frivolous" does not confer federal subject matter jurisdiction and may be dismissed sua sponte before service of process. Franklin v. Murphy, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984); see also Fed. R. Civ. P. 12(h)(3); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 593 (2004) ("[I]t is the obligation of both district court and counsel to be alert to jurisdictional requirements."); Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995) ("[D]ismissal of Branson's complaint was required because the district court lacked subject matter jurisdiction . . . .").

The court may also sua sponte dismiss a complaint for failure to comply with Federal Rule of Civil Procedure ("Rule") 8. Rule 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed sua sponte for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969); Simmons v.

Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (stating that a district court has the power to sua sponte dismiss a complaint for failure to comply with Rule 8 where the complaint is so confused, ambiguous, or unintelligible that its true substance is well disguised); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written . . . , prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a district court may dismiss a complaint for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n.4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations and quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

<u>DISCUSSION</u>

For the reasons set forth below, the Court sua sponte concludes that the Complaint should be dismissed. The Court is cognizant that Defendants have filed a Motion for Summary Judgment, but finds that it is premature to rule on the merits of that Motion as Plaintiffs have not yet stated a claim upon which relief can be granted.

I.    Counts I: Violation of the Sherman/Clayton Antitrust Acts

In Count I, Plaintiffs allege violations of Sections 1 and 2 of the

Sherman Antitrust Act and seek relief for these violations pursuant to Section 4 of

the Clayton Antitrust Act.  (Compl. ¶¶ 194, 196.)  Plaintiffs have failed to plead

these counts with sufficient specificity.

Section 1 of the Sherman Act prohibits "[e]very contract, combination

in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce

among the several States, or with foreign nations."  15 U.S.C. § 1.  To state a claim

under Section 1, "'claimants must plead not just ultimate facts (such as a

conspiracy), but evidentiary facts which, if true, will prove: (1) a contract,

combination or conspiracy among two or more persons or distinct business entities;

(2) by which the persons or entities intended to harm or restrain trade or commerce

. . . (3) which actually injures competition.'"  William O. Gilley Enters., Inc. v.

Atlantic Richfield Co., 588 F.3d 659, 669 (9th Cir. 2009) (per curiam) (quoting

Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)); see also Coal.

for ICANN Transparency, Inc. v. VeriSign, Inc., 611 F.3d 495, 501–02 (9th Cir.

2010) (same).

Section 2 of the Sherman Act makes it illegal to "monopolize, or

attempt to monopolize, or combine or conspire with any other person or persons, to

monopolize any part of the trade or commerce among the several States, or with foreign nations."  15 U.S.C. § 2.  Monopolization and attempted monopolization are the two traditional claims asserted under Section 2.  To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009) (quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481 (1992)); Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130 (9th Cir. 2004) (listing the elements of a monopolization claim).

Sections 1 and 2 of the Sherman Act thus "focus on different problems."  See Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir. 1991).  Whereas "concerted conduct is subject to sanction [under Section 1] if it merely restrains trade, unilateral conduct is subject to sanction [under Section 2] only if it either actually monopolizes or threatens monopolization."  Id. at 541 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767–69 (1984)); see also Am. Needle, Inc. v. Nat'l Football

13

League, 130 S. Ct. 2201, 2208–09 (2010) (stating that although Section 1 applies only to concerted action that restrains trade, Section 2 covers both concerted and independent action, but only if that action monopolizes or threatens actual monopolization, a category which is narrower than restraint of trade).

Regardless of the provision purportedly violated, an antitrust plaintiff must demonstrate that the injury in question is "injury of the type the antitrust laws were intended to prevent." Brunswick, 429 U.S. at 489. Indeed, the antitrust laws "were enacted for 'the protection of competition, not competitors.'" Id. at 488 (quoting Brown, 370 U.S. at 320); see also Cascade Health Solutions, 515 F.3d at 501–02 (recognizing the Supreme Court's "long and consistent adherence to the principle that the antitrust laws protect the process of competition, and not the pursuits of any particular competitor").

A plaintiff seeking damages pursuant to Section 4 of the Clayton Act must show causal antitrust injury, and to obtain injunctive relief pursuant to Section 16 of the Clayton Act, a plaintiff must allege threatened antitrust injury.[1]

---

[1] Section 4 of the Clayton Act provides treble damages to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15. Section 16 of the Clayton Act provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

Cargill, 479 U.S. at 109–13. The purpose of the antitrust injury requirement is to "ensure[] that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 342 (1990). As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition." Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495 U.S. at 334); see also Cascade Health Solutions, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

Plaintiffs have failed to adequately allege causal antitrust injury and Count I therefore fails. The crux of Defendants' argument is that MERS and ASB, as well as other "large private banking institutions within the United States" agreed

to establish a scheme "by which they would and did set up a private system of recording interests." (Compl. ¶ 175.) Subsequently, these banks "used their combined market power in the financial industry to take control of the market for private securitization of mortgages." (Id. ¶ 176.) Plaintiffs complain that "subsequent to the creation of MERS, the Big Banks and MERS used their control over the residential mortgage market by inflating the market for residential properties . . . ." (Id. ¶ 179.) Plaintiffs allege that "[b]ecause larger loans generated larger fees, the originators would steer customers toward larger loans with promises of real estate investment growth." (Id. ¶ 184.) Finally, Plaintiffs contend that establishing MERS as a "nominee" serves to "protect and insulate Defendant ASB from otherwise valid claims and defenses by mortgagors and borrowers. . . ." (Id. ¶ 193(a).) Plaintiffs contend that this conduct "violates the Sherman Anti-Trust Act." (Id. ¶ 194.)

The Complaint is utterly devoid of any factual allegations which support these contentions. For instance, there is no explanation or allegations to how these banks "used their combined market power in the financial industry to take control of the market." Nor do Plaintiffs explain how, exactly, "subsequent to the creation of MERS, the Big Banks and MERS used their control over the residential mortgage market by inflating the market for residential properties . . . ."

Finally there simply is no allegation, beyond conclusory statements, that Defendants engaged in any sort of anticompetitive conduct. Without sufficiently alleging antitrust injury, this count of the Complaint cannot survive. Accordingly the Court **DISMISSES** Count I of the Complaint.

II.    Count II: Violation of the Hawaii Antitrust and Anti-Monopoly Acts

Plaintiffs, relying on their factual allegations with respect to Count I, allege a violation the Hawaii Monopolization Act, Hawaii Revised Statutes § 480-9. (TAC ¶ 115.) The act provides that "[n]o person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize any part of the trade or commerce in any commodity in any section of the State." Haw. Rev. Stat. § 480-9.

The close relationship between federal antitrust law and Hawaii antitrust law has long been established. See, e.g., Robert's Hawaii Sch. Bus v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the similarities between Section 2 of the Sherman Antitrust Act and Haw. Rev. Stat. § 480-9.) Indeed, the "[l]egislative history of Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws." Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc., 513 F. Supp. 726, 738 (D. Haw. 1981). Similar to federal law,

therefore, Hawaii courts require plaintiffs in antitrust proceedings to plead the "nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior." <u>Davis v. Four Seasons Hotel Ltd.</u>, 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law). Thus, Plaintiffs' failure to sufficiently allege any anticompetitive conduct as discussed with respect to Count I is applicable to Count II as well. Accordingly the Court **DISMISSES** Count II of the Complaint.

III.  <u>Count III: Misrepresentation</u>

The Third Count alleges that "Defendant ASB did not disclose to plaintiffs that MERS would be their mortgagee essentially separating the mortgage from the note and creating an inability to effectively communicate or negotiate." (Compl. ¶ 212.) Plaintiffs claim that "ASB intentionally misrepresented the actual mortgagee and mortgage by creating an ambiguous document." (<u>Id.</u> ¶ 213.) Plaintiffs contend that had they "known of Defendant ASB's true intention to arbitrarily deny them the opportunity to refinance or modify their loans . . . , Plaintiffs would not have entered into the loan transactions." (<u>Id.</u> ¶ 216.) As a result of these alleged fraudulent misrepresentation, Plaintiffs claim to be entitled to damages. (<u>Id.</u> ¶ 218.)

The Court finds that Plaintiffs' allegations are insufficient to satisfy the more rigorous pleading requirements of Rule 9 that apply to allegations of fraud or mistake.  See Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake).  The claim must "be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  Kearns, 567 F.3d at 1120.  A plaintiff "must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988).

The allegations of misconduct related to this Count are over broad and general in nature.  Specifically, Plaintiffs do not detail what specific conduct resulted in the fraudulent misrepresentation to survive Iqbal-Twombly.  (See, e.g., FAC ¶¶ 125, 126.)  For instance, Plaintiffs claim that ASB "intentionally misrepresented" the actual mortgagee and mortgage by creating an "ambiguous document."  But there is no accompanying facts describing the "who, what, when, where, and how" of this allegation.  Kearns, 567 F.3d at 1120.  Further, it does not seem to the Court that Defendants engaged in any misrepresentation.  The mortgage itself plainly states the role that MERS would play in Plaintiffs' home loan.  Plaintiffs signed the mortgage.  How this apparent disclosure somehow

qualifies as a misrepresentation is unclear to the Court.  See Cervantes v.

Countrywide Home Loans, Inc., ---F.3d---, 2011 WL 3911031, at *5.  (9th Cir.

Sept. 7, 2011) (concluding similarly).

Accordingly, the Court **DISMISSES** Plaintiffs' Complaint with

respect to Count III.

IV.    Count IV: Unfair and Deceptive Acts or Practices

Plaintiffs claim that Defendants engaged in unfair or deceptive acts

and practices ("UDAP") in violation of HRS §§ 480-2(a) and 481A-3.  (Compl.

¶¶ 220–35.)

Hawaii Revised Statute section 480-2(a) provides that "[u]nfair

methods of competition and unfair or deceptive acts or practices in the conduct of

any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2(a).  "Two distinct

causes of action have emerged under [section] 480-2(a): (1) claims alleging unfair

methods of competition; and (2) claims alleging unfair or deceptive acts or

practices."[2]  Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179,

---

[2] Although "[a]ny person" may bring an action for unfair methods of
competition in violation of section 480-2, only consumers, the attorney general, or
the director of the office of consumer protection may bring an action for unfair or
deceptive acts or practices in violation of section 480-2.  Haw. Rev. Stat. § 480-
2(d), (e); see also Davis v. Four Seasons Hotel, Ltd., 228 P.3d 303, 307 (Haw.
2010).  A "consumer" is a "natural person who, primarily for personal, family, or
(continued...)

1207 (Haw. 2006); see also Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344, 1346 (D. Haw. 1996).  HRS § 481A-3 similarly prohibits "deceptive trade practice[s]."

Plaintiffs contend that Defendants violated these statutes by: (1) targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products; (2) offering a credit line as bait and then failing to address the promise after the loan was completed; (3) failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiffs; (4) failing to protect the Plaintiffs' construction loan funds; (5) falsely representing MERS as a holder of the note in a position to foreclose; (6) falsely using Fannie Mae and Freddie Mac mortgage loan forms; (7) making false statements regarding the documents in the possession of MERS and/or ASB; (8) making a property loan at the time when the bank was experiencing high losses due to the sale of risky and deflated mortgage backed securities; and (9) continuing to use MERS to hold/hide the mortgage while the bank collected cash down payments and closing costs from the Plaintiffs.  (Compl. ¶ 145.)

---

[2](...continued)
household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment."  Haw. Rev. Stat. § 480-1.

Plaintiffs have again failed to allege sufficiently this count of the Complaint.  Plaintiffs have alleged no facts which suggest that any of the Defendants were targeting financially unsophisticated or otherwise vulnerable consumers.  Nor have Plaintiffs proffered facts with respect to Defendants' failure to adequately disclose "the true nature of MERS."[3]  There are no factual allegations which suggest that the lender failed to disclose that it approved loans based on certain documents.

Plaintiffs' allegation that Defendants falsely represented or failed to fully and completely disclose information to Plaintiffs is also insufficient.  These are fraudulent allegations and Plaintiffs have failed to satisfy the "who, what, where, when, and how" requirement of Rule 9(b).  Kearns, 567 F.3d at 1120.

In sum, there is simply no factual premise or basis alleged in the complaint that supports Plaintiffs' UDAP claim.  Plaintiffs have utterly failed to allege facts that could give rise to this cause of action.  See Iqbal, 129 S. Ct. at 1949 ("[A Complaint] demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

---

[3]  Indeed, as discussed, Defendants seemingly completely disclosed the role MERS would play in their home loan.

level.").  The Court therefore **DISMISSES** Plaintiffs' Complaint with respect to

Count IV.

V.    Count V: Breach of Fiduciary Duty

Plaintiffs allege that Defendants owed and breached to Plaintiffs a

fiduciary duty in connection with their loan.  (See Compl. ¶¶ 236–45.)  Generally

there exists no fiduciary duty between borrowers and lenders.  Unless a special

relationship exists between a borrower and lender that elevates the lender's

responsibility, the standard "arms-length business relationship" applies.  Giles v.

General Motors Acceptance Corp., 494 F.3d 865, 883 (9th Cir. 2007); see also

Pension Trust Fund for Operation Engineers v. Federal Ins. Co., 307 F.3d 944, 954

(9th Cir. 2002).

In the instant Complaint, Plaintiffs make no allegations suggesting

that their relationship to Defendants is anything other than an ordinary,

arms-length, lender-borrower relationship.  Plaintiffs claim that ASB was a

fiduciary because they provided a loan and loan services to them which would

"allow them to satisfy their obligations without risk of losing their property."

Plaintiffs here have effectively described a simple arms-length, lender-borrower

relationship.  Without more, the Court cannot conclude that Defendants owed

Plaintiffs a fiduciary duty. The Court therefore **DISMISSES** Count V of the

Complaint.

VI.    Count VI: Unjust Enrichment

Plaintiffs next allege that they are entitled to unjust enrichment.

Plaintiffs specifically claim that "Defendant ASB has been unjustly enriched at the

expense of the Plaintiffs [] and maintenance of the enrichment would be contrary to

the rules and principles of equity." (Compl. ¶ 250.)

To prevail on an unjust enrichment claim, a plaintiff must show that:

1) it has conferred a benefit upon the defendant, and 2) that the retention of the

benefit was unjust. Wadsworth v. KSL Grant Wailea Resort, Inc., ---F. Supp. 2d

----, No. 08-00527, 2010 WL 5146521, at *11 (D. Haw. December 10, 2010).

As a general rule, "[a]n action for unjust enrichment cannot lie in the

face of an express contract." Porter v. Hu, 169 P.3d 994 (Haw. App. 2007); see

also Goodwin v. Executive Trustee Servs., LLC, 680 F. Supp. 2d 1244, 1255 (D.

Nev. 2010) ("An action 'based on a theory of unjust enrichment is not available

when there is an express, written contract, because no agreement can be implied

when there is an express agreement.'" (quoting Leasepartners Corp. v. Robert L.

Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev. 1997)));

MacDonald v. Hayner, 715 P.2d 519, 522 (Wash. App. 1986) ("A party to a valid

express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.")  Here both the note and the mortgage were express agreements that Plaintiffs executed in connection with their loan which govern the parties rights and obligations.  Plaintiffs cannot, therefore, pursue an unjust enrichment claim.

Accordingly the Court **DISMISSES** Count VI of the Complaint.

VII.   Count VII: Slander of Title

Count VII of the complaint alleges Slander of Title.  Specifically, Plaintiffs allege that "[t]he recording of the ambiguous mortgage document by MERS, as mortgagee and nominee for ASB directly impairs the vendibility of the property on the open market."  (Compl. ¶ 256.)  This alleged recording of an ambiguous mortgage was, according to Plaintiffs,  motivated by "fraud and malice" because ASB and MERS " knew or should have known that bifurcation of the mortgage and the note invalidates the transaction [and] MERS has no written authority to assign any such documents . . . ."  (Id. ¶ 261.)

Slander of title  is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage."  Southcott v. Pioneer

Title Co., 21 Cal. Rptr. 917, 919 (Cal. App. 1962) (citations omitted). "To establish slander of title at common law, a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." B & B Inv. Group v. Gitler, 581 N.W.2d 17, 20 (Mich. App. 1998); see also Manhattan Loft, LLC v. Mercury Liquors, Inc., 93 Ca. Rptr. 3d 457, 464 (Cal. App. 2009) (establishing elements as "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.").

Plaintiffs have once more run afoul of Twombly-Iqbal. There is no allegation as to why the assignment was false aside from conclusory allegations. Further the Court finds that Plaintiffs have insufficiently alleged that any false publication was done with malice. First, the Court notes again that, to the extent its malice claim is based on fraudulent conduct, Plaintiffs have failed to satisfy the heightened pleading standard of Rule 9. (See Compl. ¶ 261.) A claim based on fraudulent conduct must "be accompanied by the 'who, what, when, where, and how' of the misconduct charged." Kearns, 567 F.3d at 1120. Plaintiffs have made no such showing. In any event, having failed sufficiently to allege that the

recording itself was false, it cannot be that Plaintiffs sufficiently alleged that BAC knew the assignment was false as suggested by the FAC.

The Court therefore **DISMISSES** Plaintiffs' Complaint with respect to Count VII.

## VIII.  Count VIII: Injunctive Relief

Count VIII of the Complaint asserts a claim for injunctive relief to prevent Defendants from foreclosing on the Subject Property.  (Compl. ¶¶ 262–67.)  Plaintiffs' request for injunctive relief appears to be a request for relief derivative of their other claims and not a standalone claim.  Because the Court finds that all of Plaintiffs' claims should be dismissed, and because Plaintiffs fail to allege any facts showing that they are entitled to this equitable remedy, the Court finds that Plaintiffs' claim for injunctive relief should be dismissed as well.

Accordingly, the Court **DISMISSES** Count VIII of the Complaint.

## IX.  Cervantes v. Countrywide Home Loans, Inc.

In addition to failing to allege sufficiently the causes of actions as outlined supra, the Court has grave doubts about the validity of the factual predicate underlying most, if not all, of Plaintiffs' claims in light of Cervantes. There, plaintiffs argued that they could amend their complaint to illustrate that

certain "aspects of the MERS system are fraudulent." 2011 WL 3911031 at *1.

The Ninth Circuit disagreed.

The Ninth Circuit first outlined how the MERS system functions. (Id.

at *1–2.) The court next described plaintiffs' theory of the case as follows:

> One of the main premises of the plaintiffs' lawsuit here is that the MERS system impermissibly "splits" the note and deed by facilitating the transfer of the beneficial interest in the loan among lenders while maintaining MERS as the nominal holder of the deed.
>
> The plaintiffs' lawsuit is also premised on the fact that MERS does not have a financial interest in the loans, which, according to plaintiffs, renders MERS's status as a beneficiary a sham. MERS is not involved in originating the loan, does not have any right to payments on the loan, and does not service the loan. MERS relies on its members to have someone on their own staff become a MERS officer with the authority to sign documents on behalf of MERS . . . As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans.

Id. at *2. Ultimately the Ninth Circuit rejected plaintiffs' arguments. The court

first found that plaintiffs had "not identified any representations made to them

about the MERS system and its role in their home loans that were false and

material." Id. at *4. Nor did the plaintiffs allege with specificity that they "were

misinformed about MERS's role as a beneficiary, or the possibility that their loans

would be resold and tracked through the MERS system." Id. The plaintiffs also

"failed to show that the designation of MERS as a beneficiary caused them any

injury by, for example, affecting the terms of their loans, their ability to repay the

loans, or their obligations as borrowers." Id.

Moreover, the Ninth Circuit also found that plaintiffs' claims were

> undercut by the terms in [the] standard deed of trust, which describe
> MERS's role in the homeloan.  For example the plaintiffs allege they
> were defrauded because MERS is a "sham" beneficiary without a
> financial interest in the loan, yet the disclosures in the deed indicate
> that MERS is acting "solely as nominee for Lender and Lender's
> successors and assigns" and holds "only legal title to the interest
> granted by Borrower in this Security Instrument."  Further, while the
> plaintiffs indicate that MERS was used to hide who owned the loan,
> the deed states that the loan or a partial interest in it "can be sold one
> or more times without prior notice to Borrower," but that "[i]f there is
> a change in Loan Servicer, Borrower will be given written notice of
> the change" as required by consumer protection laws.  Finally, the
> deed indicates that MERS has "the right to foreclose and sell the
> property."  By signing the deeds of trust, the plaintiffs agreed to the
> terms and were on notice of the contents. . . . In light of the explicit
> terms of the standard deed signed by [plaintiffs] it does not appear that
> the plaintiffs were misinformed about MERS's role in their home
> loans.

Id. at *5.

The Ninth Circuit in Cervantes also considered and rejected the

"splitting of the note" theory of liability:

> Even if we were to accept the plaintiffs' premises that MERS is a
> sham beneficiary and the note is split from the deed, we would reject
> the plaintiffs' conclusion that, as a necessary consequence, no party
> has the power to foreclose.  The legality of MERS's role as a
> beneficiary may be at issue where MERS initiates a foreclosure in its

own name, or where the plaintiffs allege a violation of state recording and foreclosure statutes based on the designation. . . .

Further, the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds are not agents of the lenders.

Id. at *7.

The mortgage at issue in the instant case contains identical language to the mortgage at issue in Cervantes.  Specifically, the mortgage put Plaintiffs on notice that MERS had "the right to foreclose and sell the Property."  (Mortgage at 3.)  The mortgage also provided that MERS was acting "solely as nominee for Lender and Lender's successors and assigns" (id. at 2) and holds "only legal title to the interest granted by Borrower in this Security Instrument" (id. at 3).  Accordingly, per the mortgage, MERS was granted the right to foreclose on the property on behalf of the lenders in the event of Plaintiffs' default.  Plaintiffs were aware of MERS's role as they signed the mortgage.  See Cervantes, 2011 WL 3911031 at *5.  Therefore, it seems that Plaintiffs' theories of liability are not tenable in light of Cervantes.

X.   Dismissal without Prejudice

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with

extreme liberality." <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 792 (9th Cir. 2009). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment." <u>Id.</u> "However, 'liberality in granting leave to amend is subject to several limitations.'" <u>Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." <u>Id.</u> (citing <u>Ascon Props</u>, 866 F.2d at 1160). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" <u>Id.</u> (quoting <u>Ascon Props</u>, 866 F.2d at 1160).

The Court recognizes that it may be possible for Plaintiffs to state a claim if provided the opportunity to amend their Complaint. The Complaint is therefore **DISMISSED WITHOUT PREJUDICE** as against all Defendants in this action with leave to amend no later than thirty (30) days from the filing of this Order.[4] Failure to do so and to cure the pleading deficiencies will result in dismissal of this action <u>with prejudice</u>. Plaintiffs are advised that the amended

---

[4] Plaintiffs are advised, however, to take a <u>close</u> look at <u>Cervantes</u> before refiling their Complaint.

complaint <u>must clearly state</u> how each of the named defendants have injured them, and it must also <u>clearly identify</u> the statutory provisions under which Plaintiffs' claims are brought consistent with this Order.  In granting leave to amend the Court does not here limit Plaintiffs' amended pleading only to the causes of action presently contained in the Complaint—Plaintiffs may allege new theories of liability if they so choose.

CONCLUSION

For these reasons the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' Complaint against all Defendants, **DENIES AS MOOT** Defendants' Motion for Summary Judgment (Doc. # 9), and **VACATES** the Hearing on this matter set for October 14, 2011.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 13, 2011.

_____
David Alan Ezra
United States District Judge

Fitzgerald et al. v. American Savings Bank, F.S.B. et al., Cv. No. 11-00199 DAE-RLP; ORDER: (1) DISMISSING PLAINTIFFS' COMPLAINT WITHOUT PREJUDICE AS TO ALL DEFENDANTS; (2) DENYING AS MOOT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (3) VACATING THE HEARING