IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| TIMOTHY J. FITZGERALD, | ) | CV. NO. 11-00199 DAE-RLP |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | |
| AMERICAN SAVINGS BANK, F.S.B.; MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS; MARC IOANE, ASSISTANT VP PRESIDENT OF AMERICAN SAVINGS BANK, FSB AND CERTIFYING OFFICER OF MERS; SUSAN TILDEN LAU, SR. VP PRESIDENT OF AMERICAN SAVINGS BANK, FSB AND CERTIFYING OFFICER OF MERS; AND CORPORATE DOES 1-50, JOHN DOES 1-50, JANE DOES 1-50, INCLUSIVE, | ) | |
| Defendants. | ) | |

ORDER: (1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; AND (2) GRANTING LEAVE TO AMEND

On March 12, 2012, the Court heard Defendants American Savings Bank, F.S.B., Merscorp, Inc., Mortgage Electronic Registration Systems ("MERS"), Marc Ioane, and Susan Tilden Lau's (collectively, "Defendants")

Motion for Judgment on the Pleadings. (Doc. # 40.) Arnold Thielens Phillips, Esq., appeared at the hearing on behalf of Plaintiff Timothy J. Fitzgerald; Lisa K. Strandtman, Esq., appeared at the hearing on behalf of Defendants. After reviewing the Motion and the supporting and opposing memoranda, the Court **GRANTS** Defendants' Motion.

BACKGROUND

The instant action arises out of a December 17, 2007 transaction in which Plaintiff Timothy J. Fitzgerald ("Plaintiff") and his partner, Virginia Parsons ("Parsons"), executed a promissory note for $800,775.00 in favor of Defendant American Savings Bank, F.S.B. ("ASB"), which was secured by a mortgage on real property located at 2276 West Vineyard Street, Wailuku, Hawaii 96793 (the "Subject Property").[1] ("FAC," Ex. 1, Doc. # 37-1.) The Mortgage, which included a Construction Interest Rider, was recorded in the Bureau of Conveyances on July 20, 2007. (Id.)

---

[1] Plaintiff attached as exhibits to his Amended Complaint a copy of the subject Mortgage, Note, Construction Loan Rider, Notice of Mortgagee's Non-Judicial (Power of Sale) Foreclosure Sale, and Assignment of Mortgage. "When ruling on a motion to dismiss, [courts] may 'generally consider [ ] allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" Colony Cove Properties, LLC v. City of Carson, 640 F.3d 948, 955 (9th Cir. 2011) (quoting Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007)). Accordingly, it is appropriate for the Court to consider these documents when ruling on the Motion.

2

The Mortgage identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as the "nominee for Lender and Lender's successors and assigns" and as the "mortgagee under this Security Instrument." (Id.)

On November 3, 2009, MERS recorded a Notice of Non-Judicial Foreclosure Sale. (Id., Ex. 4.)

On December 14, 2010 [sic], Parsons filed a Chapter 11 bankruptcy petition.[2] (Id. at ¶ 45.) On or about February 11, 2010, MERS, acting as nominee for ASB, filed a motion for relief from the automatic stay in Parsons' bankruptcy proceeding. (Id. at ¶ 46.) Defendant Marc Ioane ("Ioane"), Assistant Vice-President of ASB, submitted a declaration in support of the motion.[3] (Id., Ex. 5.)

On June 15, 2010, Plaintiff filed a petition for Chapter 13 bankruptcy. (Id. at ¶ 59.) On or about October 28, 2010, ASB filed a motion for relief from the automatic stay in Plaintiff's bankruptcy proceeding. (Id. at ¶ 61; Ex. 6.) Defendant Susan Tilden Lau ("Lau"), Senior Vice-President of ASB, submitted a declaration in support of the motion. (Id., Ex. 6.)

---

[2] In their Motion, Defendants clarify that the date on which Parsons filed for bankruptcy was actually December 14, 2009. (See Mot. at 3.)

[3] Plaintiff's FAC does not indicate whether the bankruptcy court granted relief from the automatic stay in Parsons' bankruptcy proceeding. However, Defendants' Motion indicates that relief was granted. (See Mot. at 3.)

On or about March 3, 2011, ASB was granted relief from the automatic stay in Plaintiff's bankruptcy proceeding. (Id. at ¶ 66.)

On March 11, 2011, MERS assigned the mortgage to ASB. (Id. at ¶ 67; Ex. 7.)

On May 9, 2011, ASB filed an adversary proceeding in bankruptcy court seeking to foreclose on the Property. (Id. at ¶ 72.)

Plaintiff filed his original complaint against Defendants on March 28, 2011, alleging (1) Violation of Sherman/Clayton Anti-Trust Acts; (2) Violation of Hawaii Anti-Trust/Anti-Monopoly Acts; (3) Misrepresentation; (4) Unfair and Deceptive Acts or Practices; (5) Breach of Fiduciary Duty; (6) Unjust Enrichment; (7) Slander of Title; and (8) Injunctive Relief. (Doc. # 1.)

On June 1, 2011, Defendants filed a Motion for Summary Judgment. (Doc. # 9.) On August 8, 2011, Plaintiff filed an Opposition to Defendants' Motion. (Doc. # 24.) On August 15, 2011, Defendants filed a Reply to Plaintiff's Opposition. (Doc. # 26.)

On October 13, 2011, this Court issued an Order dismissing sua sponte Plaintiff's Complaint without prejudice, and denying as moot Defendants' Motion for Summary Judgment. (Doc. # 36.)

On November 12, 2011, Plaintiff filed his First Amended Complaint ("FAC"), which alleges two claims: (1) Fraud, and (2) Breach of Contract. (Doc. # 37.)

On January 10, 2012, Defendants filed a Motion for Judgment on the Pleadings ("Motion"). ("Mot.," Doc. # 40.) On February 17, 2012, Plaintiff filed an Opposition to Defendants' Motion. (Doc. # 43.) On February 27, 2012, Defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion. (Doc. # 44.)

## STANDARD OF REVIEW

I.  Motion for Judgment on the Pleadings

Rule 12(c) states, "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is properly granted when the court, accepting all the allegations in the pleadings as true and construing them in the light most favorable to the nonmoving party, concludes that the moving party is entitled to judgment as a matter of law. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). No issue of material fact may be in dispute. Id.

When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for

judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.'" McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810.

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1940 (2009). Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor must the court "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005).

II.     Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 8 mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that each allegation "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be

dismissed for failure to satisfy Rule 8. Hearns v. San Bernardino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 1969)); see also McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written ..., prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) ("A complaint which fails to comply with [Rule 8] may be dismissed with prejudice[.]").

Put slightly differently, a complaint may be dismissed for failure to comply with Rule 8 where it fails to provide the defendants fair notice of the wrongs they have allegedly committed. See McHenry, 84 F.3d at 1178–80 (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); cf. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1105 n. 4 (9th Cir. 2008) (finding dismissal under Rule 8 was in error where "the complaint provide[d] fair notice of the wrongs allegedly committed by defendants and [did] not qualify as overly verbose, confusing, or rambling"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a

8

cause of action will not do." Iqbal, 129 S. Ct. at 1949 (citations and quotations omitted). "The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." McHenry, 84 F.3d at 1179.

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal conclusions must be supported by factual allegations. Id. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

III. Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.

9

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement. Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)). "[T]he circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).

## DISCUSSION

I. Count I: Fraud

Plaintiff alleges that Defendants made a variety of misrepresentations and nondisclosures during the mortgage transaction process and during Parsons' and Plaintiff's bankruptcy proceedings. (See FAC ¶¶ 69, 77.) Plaintiff alleges that he detrimentally relied on Defendants' fraudulent representations, causing him to hire legal counsel and file bankruptcy proceedings, and causing him to lose the opportunity to "clarify" the loan and apply for county permits. (FAC ¶ 70.)

The elements of fraud under Hawaii law are: "(1) false representations made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon them, and (4) plaintiff's detrimental reliance." Fisher v. Grove Farm Co., Inc., 230 P.3d 382, 403 (Haw. Ct. App. 2009) (citing Hawaii's Thousand Friends v. Anderson, 768 P.2d 1293, 1301 (1989)).

Although the Court acknowledges that Plaintiff has improved his complaint by including more specific lists of the conduct constituting the alleged fraud, the Court is still unable to see how Defendants' alleged conduct would constitute a cognizable fraud claim.

### A. Role of MERS

Plaintiff's FAC is largely based on his criticisms of the MERS system. For example, Plaintiff refers to MERS as a "nominee-pretender mortgagee" (FAC ¶ 75), and alleges that MERS "was not properly overseen," (FAC ¶ 77(e)) and "was both unreliable and inaccurate" (FAC ¶ 77(a)). The Court has serious doubts about whether these contentions are tenable in light of the Ninth Circuit's recent decision in Cervantes v. Countrywide Home Loans, which rejected plaintiffs' attempt to show that aspects of the MERS system are fraudulent. 656 F.3d 1034, 1038 (9th Cir. 2011).

Plaintiff fails to state a claim that Defendants made any misrepresentations about MERS's role in the transaction. Plaintiff alleges that the "true identity and purpose of MERS was not revealed" to him. (FAC ¶ 26.) Plaintiff also asserts that he asked the signing officer about MERS and was told that MERS was "just a computer recordation processing company" and that Plaintiff should not worry because this had been the same procedure used for hundreds of loans. (FAC ¶ 25.) This is not a false statement, nor does it hide MERS's "true identity and purpose." Moreover, the mortgage, which Plaintiff signed, clearly identifies MERS and its position.[4]

Indeed, most of Plaintiff's allegations about MERS appear to be nothing more than Plaintiff's opinions. Plaintiff does not allege facts to show that Defendants misinformed Plaintiff about MERS's role in the transaction. Nor does Plaintiff assert that he relied on any statements made by Defendants about MERS when he decided to enter into the mortgage, or that he would not have agreed to the mortgage if he had received more information about the MERS system. See Cervantes, 656 F.3d at 1042.

---

[4] The first page of the Mortgage identifies the two parties to the document as: (1) Plaintiff, the Borrower, and (2) MERS, "acting solely as a nominee for American Savings Bank, F.S.B.," the Lender. The second page of the Mortgage defines "MERS" as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and identifies MERS as "the mortgagee under this Security Instrument." (See FAC, Ex. 1 at 1, 2.)

Insofar as Plaintiff alleges that MERS invalidly assigned ASB the mortgage without the note (see FAC ¶ 76), the Court notes that the Ninth Circuit has expressly rejected this "note-splitting" theory. See Cervantes, 656 F.3d at 1044 ("Even if we were to accept the plaintiffs' premises that MERS is a sham beneficiary and the note is split from the deed, we would reject the plaintiffs' conclusion that, as a necessary consequence, no party has the power to foreclose."). Therefore, the involvement of MERS in the assignment cannot be a basis for voiding the assignment, much less for a claim of fraud. See, e.g., Abubo v. Bank of N.Y. Mellon, No. 11-00312, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011).

B.  Bankruptcy Court Proceedings

Plaintiff does not allege a fraud claim based on Defendants' declarations to the bankruptcy court in support of lifting the automatic stay. (See FAC ¶¶ 56–66.) As Defendants point out, these statements cannot form the basis of a fraud claim because they were made to the bankruptcy court, not to Plaintiff himself. (See Mot. at 10.) Accordingly, these statements fail to meet the third and fourth elements of a fraud claim under Hawaii law: (3) in contemplation of plaintiff's reliance upon them, and (4) plaintiff's detrimental reliance. See Fisher, 230 P.3d at 403. The Court does not see how written declarations made to a bankruptcy court during an automatic stay proceeding could be in contemplation of

13

Plaintiff's reliance upon them, nor how Plaintiff could have relied upon these statements to his detriment. Therefore, these allegations do not state a cognizable claim for fraud.[5]

  C. Deficiencies in the Pleadings

  Notwithstanding the deficiencies already discussed, the FAC also contains wholly conclusory allegations that fail to satisfy Rule 9(b)'s heightened standard of pleadings for fraud. For instance, Plaintiff states that Defendants misrepresented that "the appraisal was fair and reasonable; met underwriting guidelines and could be relied upon as reflecting actual value," (FAC ¶ 69(c)), but does not allege any facts to show that this was false, other than that ASB's

---

[5] In his Opposition, Plaintiff argues that Defendants' allegedly false statements made to the bankruptcy court constitute "intrinsic fraud," which includes perjury. (See "Opp," Doc. # 43 at 10.) However, Plaintiff has not identified any specific statement in Defendants' declarations to the bankruptcy court that could be false. Rather, Plaintiff quotes from Defendants' declarations at great length without alleging any facts to show that the statements are false. (See FAC ¶ 53.) Moreover, Plaintiff attempts to allege various statements that were not even part of Defendants' declarations. (See id. at 57.) For example, Plaintiff alleges that Defendant Ioane made misrepresentations in that he "knew he worked for ASB, not MERS," (see id.), but Defendant stated plainly in his declaration that he is the Assistant Vice President of ASB as well as the Certifying Officer of MERS. (See id., Ex. 5.) Plaintiff further alleges that "Ioane also knew there was no MERS office in Hawaii" and "that he did not obtain physical documents from MERS corporate offices," (see id.), but Ioane said nothing to this effect in his declaration. Further, the Mortgage clearly defines MERS and its role in the transaction. (See id., Ex. 1 at 1, 2.) Therefore, the Court is hard-pressed to see how Defendants made any misrepresentations to the bankruptcy court that could state a claim for intrinsic fraud.

14

appraisers valued the property at $1,150,000 in September 2007 and $715,000 in December 2010. (FAC ¶ 21.) That one's property has a lower appraisal value in 2010 than in 2007 is not a sufficient indication to the Court that Defendants conducted anything but a "fair and reasonable" appraisal at the time it was done. As another example, Plaintiff alleges that Defendants "made false statements of material fact regarding ASB's high standard of underwriting practices as a mortgage lender," (FAC ¶ 69(a)), but fails to state what these statements were, why they were false, or why they were material to the mortgage transaction. See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." (internal quotation marks and citations omitted)).[6]

---

[6] In his Opposition, Plaintiff seemingly attempts to amend the FAC by alleging, for example, that Defendants misprinted the interest rate on the Mortgage. (See Opp. at 13.) This is not permitted. See BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., 780 F. Supp. 2d 1061, 1075 n. 10 (D. Haw. 2011); see also Zimmerman v. Pepsi Co., Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotations and modifications omitted)). The Court therefore will not consider these allegations.

Moreover, Plaintiff does not adequately plead detrimental reliance. An injury suffered through detrimental reliance on a bank's representations could be, for example, something "affecting the terms of their loans, their ability to repay the loans, or their obligations as borrowers." Cervantes, 656 F.3d at 1042. Plaintiff merely contends that he had to hire legal counsel and file for bankruptcy, and that he lost the opportunity to clarify the loan and apply for county permits after the bankruptcy court lifted the automatic stay. (See FAC ¶ 70.) If this Court were to recognize the need to hire legal counsel and file for bankruptcy proceedings as detrimental reliance, it would open the floodgates to a vast array of fraud claims.

For all of the foregoing reasons, the Court finds that Plaintiff's fraud allegations are insufficient to state a claim. Accordingly, the Court **GRANTS** Defendants' Motion as to Count I.

II. Count II: Breach of Contract

Count II of the FAC asserts that "Defendants and Plaintiff entered into his construction mortgage loan based on Defendants['] promise that it would be a portfolio loan owned by solely ASB and not sold; that the appraisal was fair and equitable value and would allowed [sic] for a $200,000 line of credit; and that there would be oversight on the Plaintiff's construction funds. (FAC ¶ 89.) Plaintiff

16

also alleges that "Defendants had contracted to perform and conduct material and financial oversight on the Plaintiff's construction project," (FAC ¶ 90) and that "Defendants breached the contract when ASB used other than its own sources to fund Plaintiff's loan; did not provide the flexibility of the loan it had promised; utilized appraisals it knew to be inaccurate and ASB failed to conduct adequate oversight on the Plaintiff's construction bonding disbursements." (FAC ¶ 93.)

These allegations are largely conclusory and fail to state a claim upon which relief can be granted. To allege breach of contract, the complaint must, at a minimum, cite the contractual provision allegedly violated. See Otani v. State Farm Fire & Cas. Co., 927 F. Supp. 1330, 1335 (D. Haw. 1996) ("Generalized allegations of a contractual breach are not sufficient."). The FAC, however, fails to identify the particular contract at issue, the particular provision that Defendants allegedly violated, and whether Plaintiff himself performed. See, e.g., Velez v. The Bank of N.Y. Mellon, 2011 WL 572523, at *3 (D. Haw. Feb.15, 2011) (explaining that a breach of contract claim requires a plaintiff to identify (1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by

the Defendant; (5) when and how the Defendant allegedly breached the contract; and (6) how Plaintiff was injured).

Further, insofar as Plaintiff alleges a breach of contract based on ASB's alleged securitization and ASB "us[ing] other than its own sources to fund Plaintiff's loan" (see FAC at ¶¶ 33, 93), this claim has no merit. The mortgage expressly states that the note "can be sold one or more times without prior notice to Borrower." (FAC, Ex. 1 at ¶ 20.) Therefore, even if Plaintiff had adequately alleged the elements of a breach of contract claim, Defendants did not breach any part of the mortgage contract in this regard.[7] See, e.g., Velez, 2011 WL 572523, at *3–4.

The Court therefore **GRANTS** Defendants' Motion as to Count II of the Complaint.

---

[7] Insofar as Plaintiff alleges that ASB's promise of a "portfolio loan" was fraudulent (see FAC ¶¶ 17–18, 37), the Court finds that this claim also fails. Even if ASB verbally promised Plaintiff a portfolio loan that would be not sold or securitized, Plaintiff has not alleged any facts to show that he suffered any harm by relying on this promise. Moreover, at the hearing on this matter, counsel for ASB represented that the loan was never sold. To the extent that Plaintiff contends that ASB's alleged securitization of the loan somehow impeded Plaintiff's ability to modify the loan, Plaintiff has not alleged that he was entitled to a modification. Indeed, he admitted in his opposition that ASB was "under no obligation to modify" his loan. (Opp. at 17.)

III. Leave to Amend

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, "requests for leave should be granted with extreme liberality." Moss v. U.S. Secret Service, 572 F.3d 962, 972 (9th Cir. 2009). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment." Id. "However, 'liberality in granting leave to amend is subject to several limitations.'" Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." Id. (citing Ascon Props., 866 F.2d at 1160). "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" Id. (quoting Ascon Props., 866 F.2d at 1160).

The Court will allow Plaintiff one final opportunity to amend his complaint. Plaintiff's FAC is therefore **DISMISSED WITHOUT PREJUDICE** as against all Defendants in this action with leave to amend no later than thirty (30) days from the filing of this Order. Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice.

19

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings and **GRANTS** Plaintiff leave to amend.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, March 13, 2012.

_____
David Alan Ezra
United States District Judge

Fitzgerald v. American Savings Bank, F.S.B. et al., Cv. No. 11-00199-DAE-RLP; (1) GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS; AND (2) GRANTING LEAVE TO AMEND